# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-444V
Filed: January 8, 2025

|  |  |
|---|---|
| DANIEL HICKEY,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Special Master Horner |

*Michael Adly Baseluos*, Baseluos Law Firm, PLLC, San Antonio, TX, for petitioner.
*Parisa Tabassian*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On January 11, 2021, the petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.* (2012) ("Vaccine Act").[2]  (ECF No. 1.)  Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of his October 27, 2020 influenza ("flu") vaccination.  (*Id.*)  On May 21, 2024, the undersigned issued a decision awarding damages based on the parties' stipulation.  (ECF No. 68.)

On May 30, 2024, petitioner filed a final motion for attorneys' fees and costs.  (ECF No. 72.)  Petitioner's counsel originally requested a total of $83,383.14 for attorneys' fees and costs, including $58,135.00 for attorneys' fees and $25,248.14 for costs.  (*Id*. at 1, 6.)  Petitioner incurred no personal costs.  (ECF No. 75-5.)  About seven months later, petitioner filed an amended motion seeking a higher than previously requested hourly rate for his orthopedic expert, Dr. Glenn Whitted, M.D.  (ECF No. 75.)

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the document will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citations to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10, *et seq.*

Whereas the initial motion requested reimbursement at a rate of $500 per hour for Dr. Whitted's work (ECF No. 72, p. 5), the amended motion requested reimbursement at a rate of $675 per hour (ECF No. 75, p. 7). Petitioner also incurred additional fees and costs in preparation of the amended motion. The new total requested was $92,421.89. (*Id.* at 10.)

Respondent filed his response to petitioner's initial motion on June 10, 2024. (ECF No. 73.) Respondent argued that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." (*Id.* at 1.) Respondent added, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." (*Id.* at 2.) Respondent requested that the court exercise its discretion and determine a reasonable award for attorneys' fees and costs. (*Id.* at 4.) However, respondent suggested that petitioner was requesting higher than typical expert rates and requested the rates be scrutinized in a case-specific determination. (*Id*. at 3-4.) Respondent also filed a response to petitioner's amended motion on December 30, 2024. (ECF No. 77.) Respondent requested that the court disregard the amended motion and objected to petitioner's filing of new evidence and new arguments. (*Id*. at 2.) Respondent stressed that Dr. Whitted's work had already been completed and billed at the originally requested rate and that inflating the rate now would amount to "reinvent[ing] the past." (*Id*. at 3.)

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 300aa-15(e)(1). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera ex rel. Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton ex rel. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Dep't of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). However, "[t]he failure of respondent to identify with particularity any objection to a request for attorney's fees and costs may be taken into consideration by the special master in the decision." Vaccine Rule 13(a)(3). Special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Dep't of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . Vaccine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

2

Expert work in this program is also assessed using the lodestar method. *Avera*, 515 F.3d at 1347 (applying the lodestar approach to the Vaccine Act); *Chevalier v. Sec'y of Health & Human Servs*., No. 15-001V, 2017 WL 490426, at *2 (Fed. Cl. Spec. Mstr. Jan. 11, 2017 (citing *Avera* and applying the lodestar calculation to both attorneys' fees and expert costs). Generally, expert hourly rates are based on a number of factors, many of which touch broadly on qualifications and on the market for the relevant expert services, but which also include "the nature, quality, and complexity of the information provided" by the expert, as well as "any other factor likely to be of assistance to the court in balancing the interests" at stake. *Aycock v. Sec'y of Health & Human Servs*, No. 19-235V, 2023 WL 8869423, at *7 (Fed. Cl. Spec. Mstr. Nov. 8, 2023) (citing *McClain v. Owens-Corning Fiberglass Corp*., No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996)); *see also Wilcox ex rel. Wilcox v. Sec'y of Health & Human Servs*., No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). Ultimately, an expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate and the petitioner has the burden of demonstrating that the expert costs incurred were reasonable. *Ceballos ex rel. Ceballos v. Sec'y of Health & Human Servs*., No. 99-97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004). Such requests must be supported by contemporaneous and detailed invoices. *Caves v. Sec'y of Health & Human Servs.*, 111 Fed. Cl. 774, 781-82 (2013); *Morse v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 683, 688-89 (2009). Petitioner's counsel has a duty to monitor expert fees and to request only those fees that are reasonable. *Perriera ex rel. Perreira v. Sec'y of Health & Human Servs*., No. 90-847V, 1992 WL 164436, at *4 (Fed. Cl. Spec. Mstr. June 12, 1992) (explaining that "[t]his court has continuously warned counsel of their obligation to monitor expert fees . . . . an unreasonable expert fee is not converted into a reasonable fee simply because it was prepaid"), *mot rev. den'd*, 27 Fed. Cl. 29 (1992), *aff'd*, 33 F.3d 1375 (Fed Cir. 1994).

The undersigned has reviewed the billing records submitted with petitioner's initial motion. (ECF No. 72.) In the undersigned's experience, the request appears reasonable, and the undersigned finds no cause to reduce the requested hours or rates *originally* requested. Although respondent suggested that petitioner requested unusually high expert rates, petitioner has pointed out that Dr. Turner's requested rate of $550 per hour has been previously approved by another special master. *Reinhardt v. Sec'y of Health & Human Servs.*, No. 17-1257, 2021 WL 2373818, at *6-7 (Fed. Cl. Spec. Mstr. Apr. 22, 2021). Dr. Whitted's original requested rate of $500 per hour is also consistent with what has been previously awarded to experts opining in SIRVA cases. *E.g. Perry v. Sec'y of Health & Human Servs*., No. 17-1207V, 2022 WL 2800863, at *5 (Fed. Cl. Spec. Mstr. June 24, 2022) (noting Dr. Bodor's requested rate of $500 per hour is reasonable because of "the role his expert report played in petitioner receiving a favorable outcome via stipulation."); *Turner v. Sec'y of Health & Human Servs.*, No. 17-678V, 2023 WL 2445578, at *3 (Fed. Cl. Spec. Mstr. Mar. 10, 2023) (reducing Dr. Natanzi's hourly rate from a requested rate of $500 per hour in a case resolved by stipulation).

Based on the reasonableness of petitioner's request, the undersigned **GRANTS** petitioner's motion for attorneys' fees and costs as originally filed at ECF No. 72.

However, the undersigned agrees with respondent that petitioner's amended request at ECF No. 75 is not reasonable.  Because the motion as a whole was not reasonable, the request for higher expert costs is denied as are the fees and costs incurred in pursuit of the motion.  In the amended motion, petitioner argues that a higher rate for Dr. Whitted is justified by the going rate for orthopedic experts in other fora and that lower rates in the program would leave petitioners "at a competitive disadvantage when recruiting talented experts." (ECF No. 75, p. 9.)  However, these arguments are irrelevant in the context of this case.  Petitioner's counsel already succeeded in recruiting Dr. Whitted to perform work in this case at a rate of $500 per hour.  While nothing prevents Dr. Whitted from seeking to bill at a higher rate in future cases, it is patently *un*reasonable for petitioner to argue that the program should reimburse an expert at a rate significantly higher than what the expert actually already billed.  As explained above, petitioner's counsel has a duty to monitor expert costs and petitioner has an affirmative burden of proof to establish that the requested expert cost is *reasonable and documented*.  Here, petitioner's initial motion was supported by a detailed invoice dated May 8, 2024, documenting that Dr. Whitted billed petitioner's counsel $11,125.00 for 21.25 hours of work billed at a rate of $500 per hour.  (ECF No. 72-3, pp. 1-2.)  Moreover, that invoice reflects that petitioner's counsel previously paid the majority of the amount due ($7,000.00) in the form of retainer payments made on August 7, 2023, and December 11, 2023.  (*Id*. at 2.)  Because these retainers were applied against the total, it is apparent on the face of the invoice that the retainers were accepted and processed by Dr. Whitted as payment for work performed at a rate of $500 per hour.  (*Id*. at 1-2.)  Therefore, the "corrected" invoice filed with petitioner's amended motion is effectively a sham.[3]  (ECF No. 75-3.)

The undersigned **DENIES** petitioner's amended motion for attorneys' fees and costs as filed at ECF No. 75.

**Accordingly, petitioner is awarded attorneys' fees and costs in the total amount of $83,383.14, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

---

[3] This case is distinguishable from *Gruskza v. Sec'y of Health & Human Servs*., No. 18-1736V, 2024 WL 4763996 (Fed. Cl. Spec. Mstr. Oct. 15, 2024).  In *Gruskza*, the undersigned awarded expert costs to petitioner based on an amended motion for fees and costs that requested a higher than initially requested rate.  In that case, however, the amened request did not change the total amount requested for costs.  Although the initial motion mistakenly cited a lower rate, the supporting documentation confirmed that the expert had initially billed at the higher rate.

The clerk of the court shall enter judgment in accordance herewith.[4]

**IT IS SO ORDERED.**

                                                           **s/Daniel Horner**
                                                           Daniel Horner
                                                           Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.